## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MICHELLE A. TURNER,

     Plaintiff,

     v.

JPMORGAN CHASE, N.A.,

     Defendant.

Civil Action No. TDC-14-0576

## MEMORANDUM OPINION

This matter is before the Court on a Motion to Dismiss filed by Defendant JPMorgan Chase Bank, N.A. ("JP Morgan Chase"). ECF No. 10. The issue before the Court is whether Plaintiff Michelle A. Turner ("Turner") has sufficiently stated a claim entitling her to relief. Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On December 20, 2013, Turner, a resident of Maryland proceeding *pro se*, filed a Complaint against JPMorgan Chase in the Circuit Court for Montgomery County, Maryland. *See* Notice of Removal at 1, ECF No. 1. On February 27, 2014, JP Morgan Chase timely removed the case to this Court on the basis of diversity jurisdiction. *Id.*

In her Complaint, Turner files suit against JP Morgan Chase for "denying my mortgage payments, repeatedly denying me home loan modifications which forced my home into foreclosure and prevented me from gaining employment," and "unfairly issu[ing] a derogatory

status on my credit report[,] resulting in an extremely low credit rating [and] making it even more difficult to obtain employment." Compl. at 1, ECF No. 2.

Turner's factual allegations, taken from her Complaint, are as follows. Turner bought her home in 1993 and lived in it with her two daughters for twenty years, during which time, Turner states, "I had excellent credit and prided myself with paying my bills on time." *Id.* After becoming unemployed, Turner fell behind on her mortgage payments. In October 2010, Turner "tried to pay for three mortgage payments which were due and would have brought [the] mortgage current, but [JPMorgan] Chase returned the check" to Turner and told her that her "home had gone into foreclosure" and that she should apply for a "hardship forbearance" through a home loan modification program. *Id.*

That same month, when Turner called JPMorgan Chase to inquire about the loan modification process, a JPMorgan Chase representative prequalified Turner for a hardship forbearance for up to one year while Turner sought employment and directed Turner to submit an application, which would be mailed to her within 7-10 days. It took eight weeks for the application to arrive, despite phone calls to JPMorgan Chase in the interim. Once Turner received the application, she scheduled a face-to-face meeting in March 2011 to discuss the paperwork. At that meeting, a JPMorgan Chase representative told Turner that she, in fact, did *not* qualify for a hardship forbearance despite what she had previously been told, but the representative and Turner nonetheless completed and submitted the application and supporting documents.

In August 2011, Turner received a letter stating that she was denied a loan modification under the Home Affordable Modification Program ("HAMP"), but the letter did not mention whether she was eligible for a hardship forbearance. When Turner called JPMorgan Chase "for

assistance and answers," a JPMorgan Chase representative suggested that Turner need not sell her house if she did not want to, that she had not yet been considered for a hardship forbearance, and that she should reapply for such forbearance and a loan modification. *Id.* Thus, in September 2011, Turner submitted a second application for forbearance and loan modification, only to be denied several months later. In April 2012, again at the suggestion of a JPMorgan Chase representative, Turner submitted a third application for a loan modification but was denied again.

Turner further alleges that at some time during summer 2013, JPMorgan Chase asked Turner to file a fourth loan modification application. Turner had not yet submitted the application when, on November 19, 2013, Turner received a letter stating that her house was to be auctioned at a foreclosure sale on December 4, 2013. Turner states that she "never received a mediation hearing with Chase foreclosure counselors or an attorney concerning this matter, nor did [she] receive proper advance notice of the sale date." *Id.* at 2.

On November 19, 2013, Turner called JPMorgan Chase to discuss the foreclosure and was told to file a loan modification application, "which would hopefully postpone or cancel the sale date." *Id.* Turner filed the application via facsimile the next day. On November 26, JPMorgan Chase postponed the sale. On December 2, "Angela from Chase" informed Turner that the sale date was postponed, but that the modification application that JPMorgan Chase had received from Turner was outdated. *Id.* Turner alleges that "Angela" told her to resubmit a new, fifth application which JPMorgan Chase had sent to her by Federal Express on November 26,

2013.  Turner submitted the fifth application and supporting documents with a hardship letter explaining her circumstances.  On December 4, 2013, Turner received another denial letter.[1]

On March 6, 2014, JPMorgan Chase filed its Motion to Dismiss, construing Turner's Complaint as asserting three claims: (1) breach of contract, (2) failure to modify a loan under the HAMP, and (3) violation of the Fair Credit Reporting Act ("FCRA"), and arguing that the Court should dismiss the Complaint because Turner failed to plead sufficiently any of these claims.

## DISCUSSION

As stated above, Turner alleges a cause of action based on her claims that JP Morgan Chase (1) "den[ied] my mortgage payments," (2) "repeatedly den[ied] my home loan modifications which forced my home into foreclosure and prevented me from gaining employment," and (3) "unfairly issued a derogatory status on my credit report[,] resulting in an extremely low credit rating, [and] making it even more difficult to obtain employment."  Compl. at 1.  For the reasons stated below, the Court, reading Turner's Complaint under the liberal standard appropriate for *pro se* litigants, finds that Turner sufficiently states a claim for breach of contract arising from JPMorgan Chase's denial of Turner's mortgage payment.  JPMorgan Chase's Motion to Dismiss as to the contract claim is therefore denied.

To the extent that Turner alleges a cause of action arising from JPMorgan Chase's repeated representations that she should file loan modification applications which were then repeatedly denied, the Court construes the Complaint as pleading either a claim under the Home Affordable Modification Program ("HAMP") or a claim under the Maryland Consumer

---

[1] According to the foreclosure case docket from the Circuit Court for Montgomery County, which JPMorgan Chase attached to its Motion to Dismiss, the foreclosure sale has since occurred and was reported to the Circuit Court on February 12, 2014.  Maryland Judiciary Case Search, Civil Action No. 379698V, Docket No. 23 (Montgomery Cnty. Cir. Ct. 2014), *available at* http://casesearch.courts.state.md.us.

Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-303(4)-(5) (West 2014). As there is no cognizable claim available to Turner under HAMP, the Court dismisses the HAMP claim with prejudice and will not permit Turner to amend the Complaint on this issue. Turner also fails to plead sufficiently a claim under the MCPA.

Turner's allegations regarding her credit report, which the Court construes as attempting to state a cause of action under the FCRA, are also insufficient to state a claim under this statute. The Court dismisses both the MCPA and FCRA claims without prejudice and will permit Turner to amend her Complaint as to these issues.

Finally, to the extent that Turner attempts to allege a claim arising from procedural irregularities with the foreclosure sale, she has failed to do so. Because Turner was required to raise any objections she may have had regarding the foreclosure sale within the Circuit Court's now-completed foreclosure proceedings, any attempt to allege such claims in an amended complaint would be barred by the doctrine of *res judicata* because the matter has already been resolved in another court. Accordingly, the Court dismisses any FCRA or unlawful foreclosure claims in Turner's Complaint with prejudice and will not permit Turner to amend the Complaint on these issues.

## I. Legal Standard

A court must deny a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim where the complaint alleges enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing whether this standard has been met, the Court must examine the

complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the Turner. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). Furthermore, while legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678, "a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted).

## II. Breach of Contract

Turner sufficiently states a claim for breach of contract. To establish a claim for breach of contract, "a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Here, Turner alleges that in October 2010, she tried to make three mortgage payments that were due to JPMorgan Chase and that would have brought her mortgage current, but that JPMorgan Chase returned her check to her. From the face of the Complaint, it does not appear that JPMorgan Chase gave Turner any explanation for why it returned her check to her, telling her only that her home was in foreclosure and that she should apply for a hardship forbearance through the home modification loan program, for which she was then subsequently denied. Taking Turner's allegations as true and drawing all reasonable inferences in the light favorable to the Turner, by refusing to accept Turner's payment, JPMorgan Chase breached its contract with Turner. *See Yacoubou v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 623, 629-30 (D. Md. 2012) (referencing the court's previous ruling in the same case that, under Maryland law, a bank's refusal to accept monthly payments tendered by a mortgagor-borrower was a breach of

contract, as stated in *Adam v. Wells Fargo Bank, N.A.*, No. ELH-09-2387, 2011 WL 3841547, at
*14 (D. Md. Aug. 26, 2011)). *See also Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 690 (7th
Cir. 2011) (refusing to accept the argument that, as a matter of law, a lender is "free to refuse a
tendered payment and then to hold the borrower responsible for having failed to make the
payment"). Thus, the Court construes the Complaint, under the liberal standard for *pro se*
complaints, as fairly stating a claim for breach of contract.

In its Motion to Dismiss, JPMorgan Chase does not challenge the sufficiency of Turner's
allegations as to the breach of contract claim, but raises the affirmative defense that such a claim
is time-barred by the statute of limitations. As a general rule, contract claims are subject to the
three-year statute of limitations for civil actions, Md. Code Ann., Cts. & Jud. Proc. § 5–101
(West 2014), which accrues from the time of breach, or from the time the plaintiff discovers, or
should have discovered, the breach. *Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1103-04
(Md. 1999). Under § 5–102(a)(5), however, any contracts executed under seal are governed by a
12-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5–102(a)(5).

The burden of establishing an affirmative defense, such as the defense that a claim is
time-barred, rests on the defendant, and therefore a court may reach such an affirmative defense
on a Rule 12(b)(6) motion only in the "relatively rare circumstances where facts sufficient to rule
on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d
458, 464 (4th Cir. 2007). Here, there are two different statute of limitations periods that may be
applicable, and it is not clear that the facts available to the Court at the Rule 12(b)(6) stage are
sufficient for the Court to conclude that Turner's claims are barred by the general statute of
limitations. JPMorgan Chase has attached to its Motion to Dismiss the Deed of Trust that Turner
originally granted to Banc One Mortgage Corporation ("Banc One") to secure the mortgage loan

on her house, in which her signature appears next to the pre-printed word, in parentheses, "(Seal)." Mot. Dismiss, Ex. A.[2] Under Maryland law, this signature form appears to establish that the deed is a sealed document. *Warfield v. Balt. Gas & Elec. Co.*, 512 A.2d 1044, 1044 (Md. 1986) ("We shall hold in this case that the inclusion of the word 'seal' in a pre-printed form executed by an individual is sufficient to make the instrument one under seal."). Therefore, the 12-year statute of limitations may well apply here. *See Pac. Mortg. & Inv. Group, Ltd. v. Horn*, 641 A.2d 913, 918 (Md. Ct. Spec. App. 1994) (applying 12-year statute of limitations to borrowers' claims against the original mortgagee bank and the subsequent bank that acquired the loan because the word "seal" was printed next to each of the borrowers' signatures on the original mortgage). At a minimum, there is a question of fact whether the mortgage in question is a sealed contract subject to a 12-year statute of limitations, so it would be inappropriate for the Court to rule on the statute of limitations defense at this time.[3]

---

[2] In reviewing a Rule 12(b)(6) motion, a court may consider a document attached to the motion to dismiss, so long as it was clearly integral to, and explicitly relied upon in the complaint, and the plaintiff does not challenge its authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Here, the Court understands Turner to be referring in her breach of contract claim to this mortgage, which JPMorgan Chase appears to have acquired from Banc One, and Turner does not challenge the document's authenticity.

[3] Turner's Complaint arguably could also be read as alleging a breach of the implied covenant of good faith and fair dealing. Although Maryland law does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing, it does recognize such an implied covenant where the "performance and enforcement" of a contract are concerned. *Blondell v. Littlepage*, 991 A.2d 80, 90-91 (Md. 2010) (citation omitted). Such a duty "requires that one party to a contract not frustrate the other party's performance," but it does not obligate a party to take affirmative actions that are not clearly required under the contract or "interpose new obligations about which the contract is silent." *Id.* Here, Turner may be alleging that JPMorgan Chase frustrated Turner's performance of their mortgage agreement through a course of conduct—returning her mortgage payments to her, misinforming her that she was prequalified for a hardship forbearance, and advising her to submit multiple applications for a hardship forbearance or a loan modification all of which were denied—that encouraged her to focus her efforts on seeking a hardship forbearance or loan modification, rather than on making additional payments. Because the Court finds that Turner has alleged a cognizable breach of contract

### III.  Home Affordable Mortgage Program

In its Motion to Dismiss, JPMorgan Chase construes Turner's pleadings regarding her loan modification applications as a claim for "refusal to modify a loan" under the HAMP. *See* Mot. Dismiss, at 6-8.  HAMP is a national program of the United States Departments of Treasury and Housing and Urban Development designed to stem the home foreclosure crisis by providing affordable mortgage loan modifications to eligible borrowers.  *See Home Affordable Modification Program*, Making Home Affordable.gov, http://www.makinghomeaffordable.gov/ programs/lower-payments/Pages/hamp.aspx (last visited Sept. 25, 2014).  JPMorgan Chase argues that this claim must be dismissed with prejudice because there is no private right of action under the HAMP.  Indeed, federal courts that have considered the issue have held that unless a borrower has entered into an agreement under HAMP, the borrower cannot bring a claim or cause of action to enforce HAMP guidelines, whether under a theory that they are third party beneficiaries of HAMP or otherwise. *See Bowers v. Bank of America, N.A.*, 905 F. Supp. 2d 697, 701-02 (D. Md. 2012). *See also Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010).  Here, Turner does not purport to state a cause of action under the HAMP in her Complaint and does not allege that she was wrongly denied HAMP benefits that she should have received.  Nevertheless, to the extent that the Complaint could be construed to allege a cause of action under HAMP, the Court dismisses the claim with prejudice and will not grant leave to amend.

### IV.  Maryland Consumer Protection Act

In alleging that JPMorgan Chase repeatedly advised her to file multiple applications for a hardship forbearance or a loan modification yet denied all of them, Turner arguably seeks to

---

claim, this Court need not analyze whether the Complaint also properly alleges a breach of the implied covenant of good faith and fair dealing.

allege a violation of the Maryland Consumer Protection Act in that she may have been unfairly misled into pursuing such applications rather than focusing on making additional payments. The MCPA prohibits "unfair or deceptive trade practices" in the "[t]he extension of consumer credit" or "[t]he collection of consumer debts." Md. Code Ann., Com. Law § 13-303(4)-(5). To state a claim under the MCPA, a plaintiff must adequately plead that (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury. *Currie v. Wells Fargo Bank*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) (citation omitted). Under the statute, an "unfair or deceptive" trade practice includes "false . . . or misleading oral or written statement[s] . . . or other representations . . . [that have] the capacity, tendency, or effect of deceiving or misleading consumers." Md. Code Ann., Com. Law § 13-301(1).

Because an MCPA claim involves fraud, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Spaulding v. Wells Fargo Bank, N.A.*, 714 F. 3d 769, 781 (4th Cir. 2013). Under Rule 9(b), a plaintiff must plead with particularity the circumstances of the fraud, including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999) (citations omitted).

Here, Turner alleges that in October 2010, a JPMorgan Chase agent prequalified her over the phone for a hardship forbearance through a home modification loan program, but then in March 2011, at a face-to-face meeting to discuss her application, another agent told her that she was, in fact, not qualified for the forbearance. Turner alleges that "[n]onetheless we submitted the completed forms and supporting documents," but that she was ultimately denied the modification. Turner also alleges that sometime later—likely August or September 2011 based

10

on the surrounding paragraphs in the Complaint—a JPMorgan Chase representative told Turner that she did not need to agree to sell her house if she did not want to, and that her prior application had only related to a loan modification and not to a hardship forbearance, so she should submit a second application for a forbearance or loan modification, which was also later denied.    On three more occasions, she was invited to submit an application for a loan modification, only to be denied each time.  Even accepting these allegations as true, however, and construing all facts and reasonable inferences in the light more favorable to the Turner, she does not meet the heightened pleading standard for fraud.  For example, although Turner alleges that the JPMorgan Chase representative told her during a March 2011 face-to-face meeting that she was, in fact, ineligible for a forbearance, she does not allege any additional facts to suggest that this statement was a misrepresentation and not simply a correction of the information she had received during the October 2010 phone call.  Similarly, Turner alleges that a JPMorgan Chase representative told her that she did not have to sell her house if she did not want to, but it is not sufficiently clear from these pleadings whether the representative made any statements suggesting that Turner should not sell her house because she would likely or definitely receive a loan modification if she reapplied.  Thus, Turner fails to identify with specificity that JPMorgan Chase's statements had the capacity, tendency, or effect of misleading Turner.

Furthermore, it is not sufficiently clear from the Complaint whether Turner meets the second element, which requires that she show that she relied on any misrepresentations.  In order to sufficiently state an MCPA claim, a plaintiff must show that the defendant's misrepresentation substantially induced a choice by the plaintiff.  *Currie*, 950 F. Supp. 2d at 796.  Here, Turner does not sufficiently plead that she detrimentally relied on the statement by a JPMorgan Chase agent that she was prequalified for a hardship forbearance, the statement that she did not have to

11

sell her house if she did not want to, or the repeated invitations to submit loan applications because she does not allege that these statements induced her to forego selling her house or to take or refrain from taking an action to her detriment. Similarly, in *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244 (D. Md. 2013), the Court held that the plaintiffs failed to state an MCPA claim where the complaint alleged that the bank's misrepresentations "*could* cause a reasonable consumer to . . . be [led] into a false state of comfort," but alleged neither that the bank specifically directed them to refrain from challenging their foreclosure proceedings and continue to submit loan modification applications, nor that such misrepresentations caused them to forego certain actions or remedies available to them to save their home. *Id.* at 254-55 (emphasis in original) (citations omitted). As for the third element, requiring that the defendant's misrepresentations cause real injury, Turner arguably could have satisfied it by alleging that her credit score was damaged and she lost her home and job because of actions that she took, or refrained from taking, in reliance of JPMorgan Chase's statements. She did not. Having failed adequately to plead the elements of an MCPA claim, the Court will dismiss that aspect of the Complaint.

## V.  Fair Credit Reporting Act

In the Complaint, Turner also states that she is filing suit against JPMorgan Chase for "unfairly issu[ing] a derogatory status on my credit report[,] resulting in an extremely low credit rating, [and] making it even more difficult to obtain employment." Compl. at 1. The FCRA, 15 U.S.C. § 1681 *et seq.*, imposes certain duties on "furnishers of information," which includes banks like JPMorgan Chase. Turner does not specify whether she is invoking this statute, but even if the Complaint is construed to allege such a cause of action, Turner does not sufficiently state a claim under any of its provisions.

12

As JPMorgan Chase points out in its Motion to Dismiss, the only FCRA claim available to Turner's private suit is for breach of a duty to correct an erroneous report to a credit agency under 15 U.S.C. § 1681s-2(b).  Under that provision of the FCRA, however, a defendant's duty to investigate and correct an erroneous report is triggered only by a report from a consumer reporting agency. §1681s-2(b)(1).  *See also Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008).  Here, Turner neither alleges that she filed a dispute with the credit reporting agency challenging the accuracy of her credit report, nor that JPMorgan Chase had notice of an erroneous report through that reporting agency.  Because Turner has failed to sufficiently plead a claim under the FCRA, that aspect of the Complaint is dismissed.

## VI.  Claims Relating to Foreclosure

Turner also alleges that she "never received a mediation hearing with Chase foreclosure counselors or any attorney concerning [her foreclosure], nor did [she] receive proper advance notice of the sale date."  Compl. at 2.  In its Reply Memorandum, JPMorgan construes these allegations as an attempt to state a claim for "illegal foreclosure," which it argues is barred by the doctrine of *res judicata*, or in the alternative, the *Rooker-Feldman* doctrine.  Reply at 4-5.

As set forth in the Complaint, Turner's allegations fail to state a claim.  Under Maryland law, a mortgagor in a foreclosure action is entitled to mediation upon filing a request with the court. Md. Code, Real Prop. § 7–105.1(j)(1) (West 2014).  The Complaint, however, does not allege that Turner ever filed such a request with the Circuit Court, or that any such request was improperly denied.  Thus, even assuming that denial of a request for a pre-foreclosure mediation session could constitute a cognizable cause of action, Turner has not alleged facts on which such a claim may be based.

Likewise, Turner's statement that she was denied proper notice of the foreclosure does not establish a viable claim. The Complaint alleges that Turner did not receive "proper advance notice" because she first received notice of the foreclosure sale when she received a certified letter on November 19, 2013, which was 15 days in advance of the original December 4, 2013 date. Compl. at 2. However, the Maryland Rules only require notice of the foreclosure sale not less than 10 days, and not more than 30 days, before the date of sale. Md. Rule 14–210(b). Moreover, the Complaint states that on November 26, over a week before the announced foreclosure sale date, JPMorgan Chase postponed the foreclosure sale, Compl. at 2, and it does not allege any notice deficiencies associated with later sale dates. Turner, therefore, has not alleged facts sufficient to support a violation of the notice requirement.

Even if Turner were to be granted leave to amend her Complaint to allege irregularities with the foreclosure process relating to notice, mediation, or other issues, she would be precluded from bringing any such claims by the doctrine of *res judicata* because the Circuit Court of Montgomery County ruled on her foreclosure when it issued a Final Ratification on Sale Order on April 21, 2014, Maryland Judiciary Case Search, Civil Action No. 379698V, Docket No. 23 (Montgomery Cnty. Cir. Ct. 2014), *available at* http://casesearch.courts. state.md.us. *Res judicata*, sometimes referred to as claim preclusion, bars claims that were raised or could have been raised in a prior litigation where: (1) that action was between the same parties; (2) the claim in the second matter is identical to the one determined in the prior action, or could have been raised and determined in the prior action; and (3) there was a final judgment on the merits of the claim in a prior action. *R & D 2001, LLC v. Rice*, 938 A.2d 839, 848 (Md. 2008).

14

Here, the Circuit Court foreclosure proceeding relating to Turner's home was between the same parties, JPMorgan Chase and Turner. For *res judicata* purposes, a ratification order is a final judgment as to the validity of the foreclosure sale, absent claims that the unsuccessful party was prevented from fully exhibiting her case by her opponent's extrinsic fraud or deception, such as by keeping her away from the court or keeping her in ignorance of the proceedings. *Ed Jacobsen, Jr. Inc. v. Barrick*, 250 A.2d 646, 648 (Md. 1969); *Theune v. U.S. Bank, N.A.*, No. MJG-13-1015, 2013 WL 5934114, at *3 (D. Md. Nov. 1, 2013). Turner neither alleges, nor is there any evidence to suggest, that she was the victim of such extrinsic fraud.

Furthermore, objections to the foreclosure proceedings, including claims about improper notice or opportunity for mediation, had to be raised within the Circuit Court's foreclosure proceedings. Md. Rule 14–305(d)(1) ("Exceptions [to a foreclosure sale] shall set forth the alleged irregularity with particularity, and shall be filed within 30 days after the date of a notice . . . . Any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise."); *Gill v. Dore*, No. JFM-12-645, 2012 WL 1927581, at *1 (D. Md. May 25, 2012) ("[I]t is clear that if a person wants to object to a foreclosure, she must do so in the context of the foreclosure proceedings instituted against her."). *See also Thomas v. Nadel*, 48 A.3d 276, 277-79 (Md. 2012) (explaining that a borrower seeking to challenge a foreclosure sale must assert before the sale any known and ripe defenses to the conduct of the sale, or raise after the sale any objections arising out of procedural irregularities); Md. Rule 14–211(a)(1) ("The borrower . . . may file *in the action* a motion to stay the sale of the property and dismiss the foreclosure action.") (emphasis added). Therefore, any new claim challenging the

15

legality of the foreclosure is barred under *res judicata*.[4]   *See Anyanwutaku v. Fleet Mortg. Group, Inc.*, 85 F. Supp. 2d 566, 570-72 (D. Md. 2000) (holding that the plaintiff's claims challenging the propriety of the state court's foreclosure proceedings, including "illegal foreclosure," were barred because they should have been raised during the state foreclosure proceedings); *Jones v. HSBC Bank USA, N.A.*, Civ. No. RWT-09cv2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011).

Because Turner's allegations relating to the foreclosure do not state a claim and any amended claim would be barred as already litigated under the doctrine of *res judicata*, the Court dismisses any foreclosure claims with prejudice and will not grant leave to amend.

## CONCLUSION

For the foregoing reasons, and as set forth in the accompanying Order, JPMorgan Chase's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. To the extent that the Complaint alleges a violation of the terms of the Home Affordable Modification Program or procedural irregularities relating to the foreclosure proceedings, those claims are dismissed with prejudice, such that no amended claims will be permitted.

---

[4] Although JPMorgan Chase also asserts that any foreclosure-related claims are barred by the *Rooker-Feldman* doctrine, that argument is unpersuasive. The *Rooker-Feldman* doctrine bars a plaintiff from challenging a state court judgment in federal court. *Davani v. Va. Dep't. of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) (explaining that a party that loses in state court may not file suit in federal district court seeking redress for an injury allegedly caused by the state court's decision). Leaving aside the fact that Turner filed her action in state court and it is JPMorgan Chase that chose to remove this case to federal court, in this instance, Turner filed her Complaint *before* the state court judgment on foreclosure, so her Complaint cannot possibly be construed to be challenging such a judgment. Whether any amended claim filed now that the foreclosure proceeding is complete would be barred by the *Rooker-Feldman* doctrine would depend on the specific claim alleged and whether it constituted a collateral attack on the judgment. The Court need not address this issue further because it finds that *res judicata* bars any amended claims on this issue.

To the extent it alleges a violation of the Maryland Consumer Protection Act or the Fair Credit Reporting Act, these claims are dismissed without prejudice, such that, to the extent Turner wishes to amend these aspects of the Complaint, she may do so within 21 days of the date of this order. Turner is cautioned that she should only file amendments as to these claims if she can validly allege additional facts that will establish, consistent with this Opinion, that she is entitled to relief under these causes of action.

To the extent that the Complaint alleges a breach of contract claim, the Motion to Dismiss is denied.

Date: September 25, 2014

THEODORE D. CHUANG
United States District Judge

17